**Percy L. DAWSON, Appellant–Petitioner,**

v.

**STATE of Indiana, Appellee–Respondent.**

No. 49A02–0311–PC–1003.

Court of Appeals of Indiana.

June 30, 2004.

Transfer Denied Sept. 9, 2004.

Susan K. Carpenter, Public Defender of Indiana, Brian Eisenman, Deputy Public

Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

### OPINION

SHARPNACK, Judge.

Percy Dawson appeals the post-conviction court's denial of his petition for post-conviction relief. Dawson raises three issues, which we restate as:

I. Whether Dawson's claim that the trial court incorrectly instructed the jury on the elements of attempted murder is waived;

II. Whether Dawson's claim that his trial counsel was ineffective is barred by res judicata;

III. Whether Dawson was denied the effective assistance of appellate counsel.

We affirm.

The relevant facts follow. Dawson and Pauline Garland were living together, but in April 1995, Dawson moved out. Garland would not let Dawson in her house, but he repeatedly forced himself inside. On April 24, 1995, Dawson came to Garland's house and knocked on her door. Garland told Dawson to go away, but he pushed open the front door and entered the house. Garland told Dawson to leave but said that since he was there, he should get some of his things from her bedroom. Upon entering the bedroom, Dawson opened a drawer, which contained some mail, a switchblade, and a box cutter. Dawson began staring at Garland, who was also in the bedroom, and he said, "I know what it is, you just want him here." Transcript at 225. Garland said, "it doesn't make a difference who stays with me because you're not." *Id.* Then, Dawson cut the left side of Garland's neck with a box cutter, paced around the bedroom, and said, "I have to do the other side." *Id.* at 226. Dawson left the bedroom and said, "if I can't have you, nobody will ever have you so I'm going to kill you and then I'm going to kill myself." *Id.* Dawson came back into the bedroom and, holding the box cutter, kneeled in front of Garland and was about to cut his throat when Garland stopped him. Dawson looked at Garland's neck, became hysterical, and went to get help. Leaving the bedroom, Dawson said, "[Garland] I love you and I know I'll never see you again." *Id.* at 227.

Garland was taken to the hospital, treated, and released the next morning. The cut Dawson inflicted on Garland's neck was just under her ear down to the area under her chin and was about seven inches long and one-half inch deep.

The State charged Dawson with attempted murder as a class A felony.[1] The trial court gave the following instructions[2] on the elements of attempted murder:

The crime of Murder is defined by statute as follows:

A person who knowingly or intentionally kills another human being, commits Murder, a Felony.

A person attempts to commit a crime when, acting with the culpability re-

---

1. Ind.Code §§ 35–42–1–1 (1995), Ind.Code 35–41–5–1 (1995). Ind.Code § 35–42–1–1 was most recently amended in 2001. *See* Pub.L. No. 17–2001, § 15. Ind.Code § 35–41–5–1 has not been amended since 1995.

2. In preparing his exhibits for post-conviction relief, Dawson was unable to locate the tape of Dawson's trial and was therefore unable to obtain a transcript of the reading of the jury instructions. The reading of the jury instructions was not included in the record on direct appeal. However, the trial court's file and the clerk's record contain printed versions of instructions labeled as preliminary, final, and proposed instructions.

quired for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime.

To convict the defendant of Attempted Murder, the State must prove each of the following elements:

1. the defendant
2. knowingly
3. with intent to kill
4. engaged in conduct, cutting at and against the person of [Garland], by means of a deadly weapon, to wit: a box knife,
5. which was a substantial step toward the commission of the crime of Murder which is to knowingly kill another human being.

If the State fails to prove each of these elements, you should find the defendant not guilty.

If the State does prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of the crime of Attempt Murder, a Class A Felony.

Appellant's Appendix at 145–146. The numbers "1," "2," "4," and "5," are crossed off on this written instruction. Instruction number four incorporated the language of the charging information, which read as follows:

[Dawson], on or about April 24, 1995, did attempt to commit the crime of murder, which is knowingly kill another human being, to-wit: [Garland], by engaging in conduct, to-wit: by knowingly cutting at and against the person of [Garland] by means of a deadly weapon, to-wit: a box cutter, which conduct constituted a substantial step toward the commission of murder[.]

*Id.* at 149–150. The trial court also provided an instruction defining the term knowingly, and that instruction read as follows:

A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of the high probability that he is doing so.

A person engages in conduct intentionally if, when he engages in the conduct, it is his conscious objective to do so.

You are instructed that knowledge, an essential element to be provide herein, may be inferred from the facts or circumstances as shown by the evidence.

*Id.* at 163. During the post-conviction proceedings, Dawson and the State disagreed as to whether the trial court gave instruction 16E on specific intent, which read as follows:

To convict a defendant of attempted murder, the jury must find that the defendant acted with the specific intent to kill when he took the substantial step towards committing the crime.

A jury may infer intent to kill from the deliberate act of using a deadly weapon against another in a manner likely to cause death or serious injury.

*Id.* at 143. A jury found Dawson guilty as charged, and the trial court sentenced him to twenty-five years in the Indiana Department of Correction, with five years suspended.

On March 19, 1997, Dawson filed a direct appeal, wherein he argued that: (1) the special judge lacked jurisdiction; (2) his trial counsel was ineffective for not objecting to the special judge's lack of jurisdiction and for not informing Dawson about the appointment of a special judge; and (3) Dawson was prejudiced by the admission of an exhibit over an objection. On appeal, we affirmed Dawson's conviction. *Dawson v. State,* No. 49A04-9608-CR-328, slip. op. at 2, 694 N.E.2d 788 (Ind.Ct.App., March 31, 1998).

Dawson filed a pro se petition for post-conviction relief, which was later amended by counsel. In Dawson's amended petition for post-conviction relief, Dawson argued that: (1) the trial court erroneously instructed the jury on the elements of attempted murder; (2) he received the ineffective assistance of trial counsel; and (3) he received the ineffective assistance of appellate counsel. After a hearing, the post-conviction court issued an order denying Dawson's petition for post-conviction relief. With regard to whether the trial court erroneously instructed the jury on the elements of attempted murder, the post-conviction court concluded that:

With the appropriate standards of review in mind, the Court first finds that [Dawson] is not entitled to the review of his claim that the Court incorrectly instructed the jury despite the fact that he calls such error "fundamental." In *Sanders v. State*, 765 N.E.2d 591 (Ind. 2002), the trial court denied post-conviction relief finding neither fundamental error nor ineffective assistance of appellate counsel. The Court of Appeals reviewed both claims and affirmed the denial of post-conviction relief. *Id.* Our Supreme Court granted transfer only to explain:

It was wrong to review the fundamental error claim in a post-conviction proceeding. As we explained in *Canaan v. State,* 683 N.E.2d 227, 235 n. 6 (Ind.1997)[, *reh'g denied, cert. denied,* 524 U.S. 906, 118 S.Ct. 2064, 141 L.Ed.2d 141 (1998)] the fundamental error exception to the contemporaneous objection rule applies to direct appeals. In post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal.

*Id.* at 592. [Dawson] is entitled to no review on his first claim because it was available but not raised on direct appeal. Furthermore, [Dawson] also claims that appellate counsel was ineffective for failing to raise the instruction issue on direct appeal, and the Court reviews that claim below.

Appellant's Appendix at 125. With regard to whether Dawson received the ineffective assistance of trial counsel, the post-conviction court concluded that:

The Court finds that [Dawson] is not entitled to review of his freestanding claim that trial counsel was ineffective. As our Supreme Court explained, "[M]ost free-standing claims of error are not available in a postconviction proceeding because of the doctrines of waiver and *res judicata.*" [*Timberlake v. State,* 753 N.E.2d 591, 597–598 (Ind. 2001), *reh'g denied, cert. denied,* 537 U.S. 839, 123 S.Ct. 162, 154 L.Ed.2d 61 (2002) ]. Like [Dawson], Timberlake raised a claim of ineffective assistance of trial counsel during his direct appeal, and the issue was resolved against Timberlake. *Id.* at 602. The court refused to revisit Timberlake's claim of ineffective assistance of trial counsel because "res judicata thus bars him from relitigating this issue in postconviction proceedings." *Id.* Because [Dawson] raised allegations of trial counsel's ineffectiveness during his direct appeal, *Dawson,* Op. at 1167, his freestanding claim of trial counsel's ineffectiveness is barred by res judicata at the post-conviction level. *Ben–Yisrayl v. State,* [738 N.E.2d 253 (Ind.2000), *reh'g denied, cert. denied,* 534 U.S. 1164, 122 S.Ct. 1178, 152 L.Ed.2d 120 (2002) ]. And [Dawson] does not allege that appellate counsel was ineffective for raising trial counsel's performance on direct appeal. Amended Petition ¶ 9(c). Furthermore, at the time that appellate counsel filed

[Dawson's] brief, the law ... required appellate counsel to allege trial counsel's ineffectiveness on direct appeal or risk waiving that claim. *See Landis v. State,* 749 N.E.2d 1130, 1133 (Ind.2001). Thus, the Court declines to review [Dawson's] freestanding claim that trial counsel rendered ineffective assistance.

*Id.* at 125–126. With regard to whether Dawson received the ineffective assistance of appellate counsel, the post-conviction court concluded that:

[Dawson] is entitled to no relief on his claim that appellate counsel was ineffective because he cannot establish prejudice. The standard for gauging appellate counsel's performance is the same as that for trial counsel and comes from *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Allen v. State,* 749 N.E.2d 1158, 1166–1167 (Ind.2001)[, *cert. denied,* 535 U.S. 1061, 122 S.Ct. 1925, 152 L.Ed.2d 832 (2002) ]. "To prevail on an ineffective assistance of counsel claim, [Dawson] must show both deficient performance and resulting prejudice." *Id.* The two prongs are separate and independent inquiries, and if a court can "dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Timberlake,* 753 N.E.2d at 603 (citing *Williams v. State,* 706 N.E.2d 149, 154 (Ind.1999)[, *reh'g denied, cert. denied,* 529 U.S. 1113, 120 S.Ct. 1970, 146 L.Ed.2d 800 (2000) ] (quoting *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052).

[Dawson] alleges that appellate counsel rendered ineffective assistance by failing to challenge the Court's jury instruction on attempted murder. The record does not show that [Dawson] objected to the giving of any instructions, and counsel Lazinsky's testimony indicates that he would not have objected. Lazinsky reviewed the court's instruction enumerating the elements of attempted murder [unnumbered instruction found at Exhibit A, p. 88] and testified that: a) he thought the instruction was an accurate statement of the law; and b) the fact that some of the elements were checked off did not mean that the Court did not read the instruction in its entirety. Thus, appellate counsel Roberts would have been required to raise any instruction error as fundamental. For error to be "fundamental," prejudice to the defendant is required. *Hopkins v. State,* 782 N.E.2d 988, 991 (Ind.2003) (citing *Wrinkles v. State,* 690 N.E.2d 1156, 1171 (Ind.1997) ("A claim of fundamental error is not viable absent a showing of grave peril and the possible effect on the jury's decision. ....."), *reh'g denied, cert. denied,* 525 U.S. 861, 119 S.Ct. 148, 142 L.Ed.2d 121 (1998)).

The Court finds, however, that even if the instruction enumerating the elements of attempted murder, Exhibit A at 88, is erroneous, such error was not fundamental for two reasons. First, [Dawson's] jury was instructed that the State was required to prove [Dawson's] specific intent to kill in the jury instruction designated 16E. Exhibit A at 86. Second, the evidence against [Dawson] was such that his intent to kill was not seriously at issue. Thus, even if appellate counsel had raised the claim as fundamental error, the result of [Dawson's] direct appeal would have been the same because [Dawson] could not have proven that he was placed in grave peril and/or the instruction affected the jury's decision.

Initially, the Court notes that the Indiana jurisprudence on the attempted murder instruction is still evolving. Just last year, the Indiana Court of Appeals issued an opinion that reversed an attempted murder conviction on direct appeal because: 1) the jury instruction

included the word "knowingly"; and 2) defendant objected to the instruction at trial. *Edwards v. State,* 773 N.E.2d 360, 363 (Ind.Ct.App.2002)[, *trans. denied* ]. The court discussed this issue as follows:

Since [the issuance of *Spradlin v. State,* 569 N.E.2d 948 (Ind.1991) ], numerous opinions of both our Supreme Court and this court have held that it is improper to include the term "knowing" in the mens rea instruction, even when the instruction properly states that the "specific intent to kill" is required. *See Ramsey v. State,* 723 N.E.2d 869 (Ind.2000); *Clay v. State,* 766 N.E.2d 33 (Ind.Ct.App.2002); *Booker v. State,* 741 N.E.2d 748 (Ind. Ct.App.2000); *State v. Foster,* 733 N.E.2d 534 (Ind.Ct.App.2000).

The Court certainly agrees with the Court of Appeals that since 2000, the *Spradlin* rule has been expanded to exclude the use of the word "knowingly" in an attempted murder instruction when the defendant objects.

Nevertheless, that was not the rule of law when [Dawson] was tried. And "[j]udicial scrutiny of counsel's performance is highly deferential and should not be exercised through the distortions of hindsight." *Timberlake,* 753 N.E.2d at 605 (quoting *Spranger v. State,* 650 N.E.2d 1117, 1121 (Ind.1995))[, *reh'g denied* ]. Furthermore and as our Supreme Court stated in *Ramsey,* "[W]hile the presence of the 'knowingly' language is highly problematic, this result does not comport with three of our post *Spradlin* decisions: *Yerden v. State,* 682 N.E.2d 1283 (Ind.1997); *Greenlee v. State,* 655 N.E.2d 488 (Ind.1995); and *Price v. State,* 591 N.E.2d 1027 (Ind. 1992)." *Ramsey,* 723 N.E.2d at 873. Thus, despite the fact that some of the instructions and the charging information include the [word] "knowing," such inclusions of that word in 1996 when appellate counsel filed his brief would not have lead to reversal on the basis of fundamental error.

*Id.* at 126–128. On this issue, the post-conviction court also added that the trial court had read instruction 16E and, "any error that appears in the elements instruction is cured by the instruction that informs the jury it must find that [Dawson] acted with the specific intent to kill." *Id.* at 129. The post-conviction court also concluded that on direct appeal, we would have found no fundamental error because of the nature of the evidence admitted at Dawson's trial, and it likened this matter to *Hopkins v. State,* 782 N.E.2d 988, 991 (Ind.2003), where our supreme court rejected a claim of fundamental error on an attempted murder instruction based on the State's overwhelming evidence.

Before discussing Dawson's allegations of error, we note the general standard under which we review a post-conviction court's denial of a petition for post-conviction relief. Post-conviction procedures do not afford petitioners an opportunity for a "super appeal." *Matheney v. State,* 688 N.E.2d 883, 890 (Ind.1997), *reh'g denied,* *cert. denied,* 525 U.S. 1148, 119 S.Ct. 1046, 143 L.Ed.2d 53 (1999). Rather, they create a narrow remedy for subsequent collateral challenges to convictions. *Id.* Those collateral challenges must be based upon grounds enumerated in the post-conviction rules. *Id.; see also* Ind. Post Conviction Rule 1(1). Petitioners bear the burden of establishing their grounds for relief by a preponderance of the evidence. *Matheney,* 688 N.E.2d at 890; *see also* P–C.R. 1(5). When petitioners appeal from a denial of post-conviction relief, they appeal a negative judgment. *Miller v. State,* 702 N.E.2d 1053, 1058 (Ind.1998), *reh'g denied,* *cert. denied,* 528 U.S. 1083, 120 S.Ct. 806, 145 L.Ed.2d 679 (2000). Therefore, on appeal, a petitioner must show that the evidence, when taken as a whole, "leads unerringly and unmistakably to a conclu-

sion opposite to that reached by the [post-conviction] court." *Matheney*, 688 N.E.2d at 890–891. We will disturb the post-conviction court's decision only if the evidence is without conflict and leads to but one conclusion and the post-conviction court has reached the opposite conclusion. *Emerson v. State*, 695 N.E.2d 912, 915 (Ind. 1998), *reh'g denied.*

## I.

■ The first issue is whether Dawson's claim that the trial court incorrectly instructed the jury on the elements of attempted murder is waived. Dawson did not raise this issue on direct appeal, but argued to the post-conviction court, and argues here, that the trial court committed fundamental error by improperly instructing the jury on the requisite intent required for attempted murder. The post-conviction court found that Dawson was not entitled to review of this issue because his claim of fundamental error was not available in a post-conviction proceeding. We agree.

Our supreme court has held that it is "wrong to review [a] fundamental error claim in a post-conviction proceeding." *Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002). Rather, in "post-conviction proceedings, complaints that something went awry at trial are generally cognizable only when they show deprivation of the right to effective counsel or issues demonstrably unavailable at the time of trial or direct appeal." *Id.; see also Canaan v. State*, 683 N.E.2d 227, 235–236 n. 6 (Ind.1997) (holding that the availability of the fundamental error exception as an exception to the waiver rule in post-conviction proceedings is generally limited to "deprivation of the Sixth Amendment right to effective assistance of counsel, or . . . an issue demonstrably unavailable to the petitioner at the time of his [or her] trial and direct appeal"), *reh'g denied, cert. denied*, 524 U.S. 906, 118 S.Ct. 2064, 141 L.Ed.2d 141

(1998). Thus, if an issue was known and available, but not raised on direct appeal, it is waived. *Timberlake*, 753 N.E.2d at 597.

Here, Dawson's argument concerning the jury instructions was available on direct appeal, but he failed to raise it. Therefore, Dawson's claim of fundamental error is waived and is not available on post-conviction relief. Consequently, the post-conviction court properly found that Dawson waived his claim that the trial court incorrectly instructed the jury on the elements of attempted murder. *See, e.g., Sanders*, 765 N.E.2d at 591–592.

## II.

■ The next issue is whether Dawson's claim that his trial counsel was ineffective is barred by res judicata. On direct appeal, Dawson argued that his trial counsel was ineffective because he failed to object to the special judge's lack of jurisdiction. In Dawson's petition for post-conviction relief and in this appeal, Dawson argues that he was denied the effective assistance of trial counsel because his trial counsel failed to object to the jury instructions given by the trial court and then failed to tender proper instructions in their place.

■ As we have previously recognized, "a defendant may raise a claim of ineffective assistance of trial counsel for the first time in a post-conviction proceeding," however, "once the defendant chooses to raise his claim of ineffective assistance of trial counsel (either on direct appeal or post-conviction), he must raise all issues relating to that claim, whether record-based or otherwise." *Ben–Yisrayl*, 738 N.E.2d at 259. A defendant who chooses to raise a claim of ineffective assistance of trial counsel on direct appeal is foreclosed from relitigating that claim, and the earlier ruling that trial counsel was not ineffective is res judicata. *Id.*

Here, in Dawson's direct appeal, he raised, and we considered and rejected, a claim of ineffective assistance of trial counsel. Res judicata thus bars him from relitigating this issue in post-conviction proceedings.[3] Therefore, the post-conviction court properly concluded that Dawson's claim that his trial counsel was ineffective is barred by res judicata. *See, e.g., id.*

## III.

The final issue is whether Dawson was denied the effective assistance of appellate counsel. Ineffective assistance of counsel claims are governed by a two-part test outlined by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Perez v. State*, 748 N.E.2d 853, 854 (Ind.2001). According to this test, Dawson must first establish that his counsel's performance was deficient. *Id.* This requires a showing that his counsel's representation fell below an objective standard of reasonableness and that the errors were so serious that they resulted in a denial of Dawson's Sixth Amendment right to counsel. *Id.* Second, Dawson must demonstrate that the deficient performance prejudiced his defense. *Id.* In order to establish prejudice, Dawson must show that there is a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Our supreme court has recognized that a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan v. State*, 755 N.E.2d 1070, 1072 (Ind.2001).

Although we have generally considered claims of ineffective assistance of trial and appellate counsel as analogous, there are significant differences between the roles of appellate and trial counsel. *Ben–Yisrayl*, 738 N.E.2d at 260. Our supreme court has recognized three categories of alleged appellate counsel ineffectiveness: (1) denying access to an appeal; (2) failing to raise issues; and (3) failing to present issues competently. *Timberlake v. State*, 753 N.E.2d at 604.

The post-conviction court concluded that Dawson was not entitled to relief on his claim that appellate counsel was ineffective because he could not establish prejudice. On appeal, Dawson argues that he was denied the effective assistance of appellate counsel because his appellate counsel: (A) failed to challenge the improper jury instructions on direct appeal; (B) brought a meritless claim of trial counsel ineffectiveness on direct appeal which has procedurally precluded Dawson from raising meritorious claims of ineffective assistance of trial counsel in the post-conviction proceeding; and (C) failed to argue on direct appeal that trial counsel was ineffective for not objecting to the attempted murder jury instructions. We will address Dawson's arguments separately.

**3.** We also note that when Dawson filed his direct appeal, our supreme court had not conclusively resolved whether ineffective assistance of trial counsel claims should be raised in direct appeal or on post-conviction relief. However, our supreme court had waived claims of ineffective assistance of trial counsel on post-conviction relief because the issue was "clearly known and available" on direct appeal. *See, e.g., Johnson v. State*, 502 N.E.2d 90, 91 (Ind.1986). Currently, the law does not require the waiver of a claim of ineffective assistance of counsel if the issue was available on direct appeal and not raised. *See Woods v. State*, 701 N.E.2d 1208, 1214–1215 (Ind.1998) (holding that a claim of ineffective assistance of trial counsel, if not raised on direct appeal, may be presented in post-conviction proceedings), *cert. denied*, 528 U.S. 861, 120 S.Ct. 150, 145 L.Ed.2d 128 (1999).

## A.

First, Dawson argues that his appellate counsel was ineffective because he failed to challenge the attempted murder jury instructions on direct appeal. When reviewing a claim of ineffective assistance of appellate counsel regarding the selection and presentation of issues, the defendant must overcome the strongest presumption of adequate assistance. *Ben–Yisrayl,* 738 N.E.2d at 260–61. In determining whether appellate counsel's performance was deficient, we consider the information available in the trial record or otherwise known to appellate counsel. *Id.* at 261. The role of appellate counsel should not be measured by information unknown to appellate counsel but later developed after the appeal by post-conviction counsel. *Id.* To prevail upon the claim of ineffective assistance of appellate counsel, the petitioner must show from the information available in the trial record or otherwise known to appellate counsel that appellate counsel failed to present a significant and obvious issue and that this failure cannot be explained by any reasonable strategy. *Id.*

■ The trial court gave the following elements instructions on attempted murder:

The crime of Murder is defined by statute as follows:

A person who knowingly or intentionally kills another human being, commits Murder, a Felony.

A person attempts to commit a crime when, acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime.

To convict the defendant of Attempted Murder, the State must prove each of the following elements:

1. the defendant
2. knowingly
3. with intent to kill
4. engaged in conduct, cutting at and against the person of [Garland], by means of a deadly weapon, to wit: a box knife,
5. which was a substantial step toward the commission of the crime of Murder which is to knowingly kill another human being.

If the State fails to prove each of these elements, you should find the defendant not guilty.

If the State does prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of the crime of Attempt Murder, a Class A Felony.

Appellant's Appendix at 145–146. The numbers "1," "2," "4," and "5," are crossed off on this written instruction. Dawson argues that the fact that the number "3" was not crossed off suggests that the trial court did not read the element "with intent to kill" to the jury, and therefore, he argues that the trial court incorrectly instructed the jury to convict him if they believed he acted "knowingly." Dawson also suggests that the following two instructions contributed to and compounded the fundamental error of the elements instruction by inappropriately reinforcing the term knowingly:

[Dawson], on or about April 24, 1995, did attempt to commit the crime of murder, which is knowingly kill another human being, to-wit: [Garland], by engaging in conduct, to-wit: by knowingly cutting at and against the person of [Garland] by means of a deadly weapon, to-wit: a box cutter, which conduct constituted a substantial step toward the commission of murder[.]

*Id.* at 149–150.

A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of the high probability that he is doing so.

A person engages in conduct intentionally if, when he engages in the conduct, it is his conscious objective to do so.

You are instructed that knowledge, an essential element to be provide herein, may be inferred from the facts or circumstances as shown by the evidence.

*Id.* at 163. During the post-conviction proceedings, Dawson and the State disagreed as to whether the trial court gave instruction 16E on specific intent, which read as follows:

To convict a defendant of attempted murder, the jury must find that the defendant acted with the specific intent to kill when he took the substantial step towards committing the crime.

A jury may infer intent to kill from the deliberate act of using a deadly weapon against another in a manner likely to cause death or serious injury.

*Id.* at 143. The post-conviction court found that the trial court gave the instruction. On appeal, Dawson argues that the trial court did not give the instruction and adds that, even if the trial court gave the instruction, it was not sufficiently curative.

Because Dawson's trial counsel did not object to the attempted murder jury instruction at trial, appellate counsel would have been required to raise this issue on direct appeal as fundamental error. "A claim of fundamental error is not viable absent a showing of grave peril and the possible effect on the jury's decision," and "for error to be 'fundamental,' prejudice to the defendant is required." *Hopkins v. State,* 782 N.E.2d at 991 (quoting *Wrinkles v. State,* 690 N.E.2d 1156, 1171 (Ind.1997)).

As the trial court recognized in its order, the state of the law regarding attempted murder jury instructions continues to evolve, so in order to address this issue, we must determine whether appellate counsel's failure to raise this issue on direct appeal would have been fundamental

error in 1997, the year Dawson filed his direct appeal. In *Spradlin v. State,* 569 N.E.2d 948, 951 (Ind.1991), our supreme court held that it was reversible error for a trial court to instruct a jury that a "knowing" mens rea was sufficient to establish guilt of attempted murder. Our supreme court also established the standard trial courts were required to use when instructing juries on attempted murder, holding that:

[A]n instruction which purports to set forth the elements which must be proven in order to convict of the crime of attempted murder must inform the jury that the State must prove beyond a reasonable doubt that the defendant, with intent to kill the victim, engaged in conduct which was a substantial step toward such killing.

*Id.* at 950.

In *Price v. State,* 591 N.E.2d 1027, 1029 (Ind.1992), our supreme court considered a matter similar to the issue here and found no error. There, the defendant argued that the trial court committed fundamental error by failing to instruct the jury that in order to convict the defendant of attempted murder, it had to find that the defendant acted with the specific intent to kill. Our supreme court disagreed, noting that the jury had been given the charging information, which read as follows:

[Defendant] did attempt to commit the crime of Murder by knowingly and intentionally firing a gun in the direction of [the victim] *with the intent to kill* the [victim], which conduct constituted a substantial step towards the commission of the crime of Murder.

*Id.* (emphasis in original). Our supreme court held that the instructions did not constitute fundamental error because, "when taken as a whole, [they] succeeded in informing the jury that intent to kill is an element of the crime of attempted mur-

der." *Id.* Since *Spradlin,* Indiana courts have affirmed convictions where jury instructions were plainly in violation of *Spradlin* because the instructions as a whole sufficiently suggested the requirement of intent to kill. *See Greenlee v. State,* 655 N.E.2d 488, 491 (Ind.1995) (holding that the jury instructions, when read together, adequately informed the jury that it needed to conclude that the defendant acted with the intent to kill before it could convict him of attempted murder).

■ Here, we agree with post-conviction court's finding that the trial court read instruction 16E to the jury. Instruction 16E was included in the file, Dawson had the burden of proving that the instruction was not given, and he failed to meet that burden. Thus, although the trial court instructed the jury on the lesser mens rea of "knowingly," it also instructed the jury that in order to find Dawson guilty of attempted murder, the State needed to prove beyond a reasonable doubt that Dawson acted with the "specific intent to kill" Garland. Appellant's Appendix at 143. Because, as in *Price,* the instructions given at Dawson's trial adequately informed the jury to convict Dawson only if they found he had the specific intent to kill Garland, appellant counsel could not have proven the prejudice necessary to establish a claim of fundamental error. *See e.g., Price,* 591 N.E.2d at 1029. Thus, appellate counsel did not fail to present a significant and obvious issue which cannot be explained by any reasonable strategy, and appellate counsel was not ineffective for failing to challenge the attempted murder jury instructions on direct appeal.

### B.

Next, Dawson argues that appellate counsel was ineffective because he brought a meritless claim of trial counsel ineffectiveness on direct appeal, which has proce-durally precluded Dawson from raising meritorious claims of ineffective assistance of trial counsel in the post-conviction proceeding. As previously mentioned, when reviewing a claim of ineffective assistance of appellate counsel regarding the selection and presentation of issues, the defendant must overcome the strongest presumption of adequate assistance. *Ben-Yisrayl,* 738 N.E.2d at 260–61.

■ On appeal, appellate counsel argued that trial counsel was ineffective because he did not object to the improper appointment of a special judge and did not inform Dawson about the appointment of a special judge. On appeal, relying upon *Stevenson v. State,* 656 N.E.2d 476 (Ind. 1995), we held that "trial counsel's failure to inform the defendant that a special judge was to preside over his trial, and the trial counsel's not objecting to the appointment of a special judge, does not constitute ineffective counsel." *Dawson,* slip. op. at 2. Appellate counsel was the attorney of record for *Stevenson,* and Dawson suggests that because appellate counsel knew our supreme court had resolved this issue, it was inappropriate for him to make the same argument in Dawson's appeal. Dawson argues that he was prejudiced by this action because the doctrine of res judicata prevented him from making a meritorious claim of ineffective assistance of trial counsel in his post-conviction proceedings.

As previously mentioned, when Dawson filed his direct appeal, our supreme court had not conclusively resolved whether ineffective assistance of trial counsel claims should be raised in direct appeal or on post-conviction relief. However, our supreme court had waived claims of ineffective assistance of trial counsel on post-conviction relief because the issue was "clearly known and available" on direct appeal. *See Johnson,* 502 N.E.2d at 91. However, in 1998, our supreme court, in

*Woods v. State,* 701 N.E.2d 1208, 1214–1215 (Ind.1998), *cert. denied,* 528 U.S. 861, 120 S.Ct. 150, 145 L.Ed.2d 128 (1999), held that a claim of ineffective assistance of trial counsel, if not raised on direct appeal, may be presented in post-conviction proceedings.

Thus, had appellate counsel not raised the ineffective assistance of counsel claim on direct appeal, the case law in effect at the time suggests that the issue would have been waived on post-conviction. *See Johnson,* 502 N.E.2d at 91. Our supreme court has recognized that a "strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Morgan,* 755 N.E.2d at 1072. Here, the law in effect at the time of Dawson's direct appeal required appellate counsel to raise the ineffective assistance of trial counsel claim or waive it on post-conviction. We cannot say that appellate counsel's decision to raise the issue fell below an objective standard of reasonableness and that the error was so serious that it resulted in a denial of Dawson's Sixth Amendment right to counsel. Thus, appellate counsel was not ineffective for bringing a meritless claim of trial counsel ineffectiveness on direct appeal that has procedurally precluded Dawson from raising potentially meritorious claims of ineffective assistance of trial counsel in the post-conviction proceeding.

### C.

 Lastly, Dawson argues that his appellate counsel was ineffective because he did not argue on direct appeal that trial counsel was ineffective for not objecting to the attempted murder instructions.[4] When the issue of ineffective assistance of appellate counsel is based upon appellate counsel's failure to properly raise and support a claim of ineffective assistance of trial counsel, the petitioner faces a compound burden. *Ben–Yisrayl,* 738 N.E.2d at 262. Here, Dawson must demonstrate that appellate counsel's performance was deficient and that, but for the deficiency of his appellate counsel, his trial counsel's performance would have been found deficient and prejudicial. *Id.*

 Dawson must establish the two elements of ineffective assistance of counsel separately as to both trial and appellate counsel. *Id.* Thus, Dawson must prove that: (1) his trial and appellate counsel's representation fell below an objective standard of reasonableness and that the errors were so serious that they resulted in a denial of Dawson's Sixth Amendment right to counsel; and (2) his trial and appellate counsel's deficient performances prejudiced his defense. *Perez,* 748 N.E.2d at 854. In order to establish prejudice, Dawson must show that there is a reasonable probability that, but for his counsels' unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

In order to establish that his trial counsel's failure to object to the jury instructions was ineffective assistance of counsel, Dawson would have first had to prove that a proper objection would have been sus-

---

**4.** The State argues that because his claim of ineffective assistance of trial counsel is barred by res judicata, his claim of ineffective assistance of appellate counsel based upon a failure to raise those alleged errors must also fail. We disagree. In *Seeley v. State,* 782 N.E.2d 1052, 1060 (Ind.Ct.App.2003), *trans. denied, cert. denied,* — U.S. ——, 124 S.Ct. 573, 157 L.Ed.2d 437 (2003), we held that "our Supreme Court did not intend to preclude claims of ineffective assistance of appellate counsel when claims of ineffective assistance of trial counsel are precluded." Therefore, we will address the merits of Dawson's claim.

tained. *Potter v. State,* 684 N.E.2d 1127, 1132 (Ind.1997). Moreover, Dawson would have also had to prove that trial counsel's failure to object was unreasonable and resulted in sufficient prejudice such that there exists a reasonable probability the outcome would have been different. *Id.*

In *Spradlin,* our supreme court held that attempted murder jury instructions should:

[Purport] to set forth the elements which must be proven in order to convict of the crime of attempted murder must inform the jury that the State must prove beyond a reasonable doubt that the defendant, with intent to kill the victim, engaged in conduct which was a substantial step toward such killing.

569 N.E.2d at 950. Here, the trial court instructed the jury that in order to convict Dawson of attempted murder it had to find beyond a reasonable doubt that Dawson, acting with the specific intent to kill Garland, engaged in conduct that constituted a substantial step toward killing her. Even though the jury instructions included reference to the term "knowingly," instructions "are to be read together as a whole and not as single units, and a single instruction need not contain all the law applicable to the case." *Hurt v. State,* 570 N.E.2d 16, 18 (Ind.1991). Here, the instructions adequately informed the jury that it needed to conclude that Dawson acted with intent to kill before it could convict him of attempted murder, and, therefore, complied with the requirements of *Spradlin. See, e.g., id.; Greenlee,* 655 N.E.2d at 491.

Dawson has failed to prove that had trial counsel objected to the jury instructions a proper objection would have been sustained, and he has failed to prove that trial counsel's failure to object resulted in sufficient prejudice such that there exists a reasonable probability the outcome would have been different. As previously men-

tioned, for this issue, Dawson needed to prove the two elements of ineffective assistance of counsel separately as to both trial and appellate counsel. Because Dawson did not prove that he was prejudiced by his trial counsel's failure to object to the attempted murder instructions, his argument that appellate counsel was ineffective for not arguing on direct appeal that trial counsel was ineffective for not objecting to the attempted murder instructions is without merit.

### Conclusion

In summary, the post-conviction court properly found that Dawson had waived his claim that the trial court incorrectly instructed the jury on the elements of attempted murder and properly concluded that Dawson's claim that his trial counsel was ineffective was barred by res judicata. Further, appellate counsel was not ineffective for failing to challenge the attempted murder jury instructions on direct appeal or for bringing a meritless claim of trial counsel ineffectiveness on direct appeal. Finally, appellate counsel was not ineffective for not arguing on direct appeal that trial counsel was ineffective for not objecting to the attempted murder instructions.

For the foregoing reasons, we affirm the judgment of the post-conviction court.

Affirmed.

DARDEN, J., and ROBB, J., concur.