**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 03 2014, 7:19 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**RAVEON HARRELL**
Carlisle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| RAVEON HARRELL, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 71A03-1310-PC-412 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE ST. JOSEPH SUPERIOR COURT
The Honorable Jane Woodward Miller, Judge
Cause No. 71D01-0906-PC-27

**September 3, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Raveon Harrell appeals the denial of his petition for post-conviction relief, arguing that his trial and appellate counsel were ineffective. Finding that the post-conviction court's findings are sufficient to justify its denial of Harrell's petition, we affirm.

FACTS

We adopt a recitation of the facts provided by this court in its memorandum decision Harrell v. State.

> Antoine, Tommie, and Harrell had an arrangement to work together to sell crack cocaine. Harrell acted as a supplier to Antoine.
>
> On August 19, 2001, Antoine and Harrell were walking in the neighborhood when Jeffrey Brown pulled up in a red pickup truck and asked Harrell if he had "anything"… Antoine sold Brown twenty dollars worth of crack cocaine.
>
> About an hour later, Brown appeared at 910 East Dayton, wanting to buy more drugs. Antoine, who was sitting on the porch with Harrell and Tommie, walked over to the driver's side window and handed Brown another twenty dollars worth of crack cocaine. Brown then began to drive away without paying. Antoine hung onto the driver's side door and was dragged about thirty or forty feet. The two exchanged punches, and Antoine eventually fell to the ground, hurting his knee.
>
> [T]he three ran to a nearby car… and drove off to find Brown. Tommie drove the car, as the three searched for Brown's truck. Upon encountering the truck, Tommie proceeded to crash into the back of it several times …. Brown eventually hit his brakes and attempted to make a U-turn but lost control of the truck and ended up in some bushes…. The three jumped out of the car and proceeded to the truck, where Antoine confronted Brown about the money and then punched Brown in the jaw a couple times. In the meantime, Tommie and Harrell broke out the back windows of the truck with two metal pipes that were found in the bed of the truck. When Brown attempted to climb out of the truck through the driver's side door, Tommie and Harrell began striking him in turn with the pipes. Brown was struck by the pipes multiple times on his head, in addition to other areas of his body. Antoine observed blood running from

2

Brown's head during the attack and also noted that blood from the pipes splashed on Antoine's clothing.

Brown died in the hospital two days later as a result of multiple blunt force injuries to the head. An autopsy revealed, among other things, severe head trauma and multiple brain injuries.

Harrell v. State, No. 71A04-0304-CR-180, slip op. at 2-4 (Ind. Ct. App. Nov. 7, 2003).

On November 22, 2002, Harrell was convicted of Murder, a felony, and Dealing in Cocaine, a class B felony. The trial court sentenced Harrell to consecutive sentences of sixty years for murder and ten years for dealing in cocaine. Harrell appealed this conviction and this court denied his appeal. Id.

On February 6, 2013, Harrell filed an amended petition for post-conviction relief, claiming ineffective assistance of both trial and appellate counsel. On October 2, 2013, the post-conviction court denied his petition and issued findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Harrell now appeals.

DISCUSSION AND DECISION

I.  Standard of Review—Post-Conviction Relief Generally

Post-conviction proceedings allow a defendant the opportunity to raise issues that were not known or available at the time of the original trial or direct appeal. Stephenson v. State, 864 N.E.2d 1022, 1028 (Ind. 2007). Post-conviction proceedings are not a "super-appeal," whereby the defendant is given the opportunity to raise all possible issues. Timberlake v. State, 753 N.E.2d 591, 597 (Ind. 2001). If an issue was known and available but not raised on direct appeal, it is foreclosed. Stephenson, 864 N.E.2d at

3

1028. If an issue was raised and decided on direct appeal, it is res judicata. Id. Claims of ineffective assistance of trial counsel, if not raised on direct appeal, can be raised at a post-conviction proceeding. Id. In order to prevail on a petition for post-conviction relief, the petitioner must establish the grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); Passwater v. State, 989 N.E.2d 766, 770 (Ind. 2013). A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made. Passwater, 989 N.E.2d at 770.

In denying Harrell's petition, the post-conviction court entered findings of fact and conclusions of law as required by Indiana Post-Conviction Rule 1(6). We cannot affirm the judgment on any legal basis, but instead, must determine if the court's findings are sufficient to support its judgment. Graham v. State, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011).

## II. Assistance of Trial Counsel

Harrell argues that he received ineffective assistance of trial counsel. Specifically, Harrell alleges his trial counsel provided him with ineffective assistance by:

(1) failing to object to the prosecutor's closing argument;

(2) presenting a defense of duress when counsel knew or should have known that duress is not a defense to crimes against the person;

(3) failing to tender a jury instruction on voluntary manslaughter and failing to object when the trial court did not give such an instruction; and

4

(4) failing to object when the trial court merged the murder count and the felony murder count.

In analyzing ineffective assistance of counsel claims, our Supreme Court has adopted the rule set forth in Strickland v. Washington, 466 U.S. 668 (1984). Timberlake, 753 N.E.2d at 603. In Strickland, the United States Supreme Court held that, in order to prevail on a claim of ineffective assistance of counsel, a petitioner must meet two requirements. First, a petitioner must show that counsel's performance was deficient. A deficient performance is one that falls "below an objective standard of reasonableness" measured against the "prevailing professional norms" of the legal profession. Strickland, 466 U.S. at 688. A petitioner must show that counsel made errors so serious that they effectively did not function as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. Id. at 687. Second, a petitioner must show that counsel's performance was so deficient that it prejudiced the petitioner's defense. Id. In order to do this, a petitioner must show that there is a reasonable probability that the result of the trial would have been different had counsel not erred. Id. at 694.

### A. Failure to Object to the Prosecutor's Closing Argument

First, Harrell argues that his trial counsel erred in failing to object to the prosecutor's closing argument, during which the prosecutor told the jury:

> I represent the State. Who is the State? The State is your neighbors, your friends… members of Jeffrey Brown's family. I'm asking you, on behalf of these people… to do justice today. Hold him, this lying murderer, accountable for what he did to this unfortunate man.

5

Tr. 485. Harrell argues that "this was a blatant emotional appeal" and cites to Rule 3.4(e) of the Indiana Rules of Professional Conduct, which states that a lawyer shall not "allude to any matter that the lawyer does not reasonably believe is relevant" during a trial. Appellant's Br. p. 18. Harrell takes particular issue with the prosecutor's use of the phrase "lying murderer."

To prevail on a claim of ineffective assistance of counsel based on trial counsel's failure to object, Harrell must first prove that an objection would have been sustained if made. Wrinkles v. State, 749 N.E.2d 1179, 1192 (Ind. 2001). We agree with the post-conviction court that Harrell has failed to make this showing.

In closing arguments, "it is proper for the attorneys to state and discuss the evidence and reasonable inferences derivable therefrom so long as there is no implication of personal knowledge that is independent of the evidence." Kappos v. State, 577 N.E.2d 974, 977 (Ind. Ct. App. 1991). In Kappos, the defendant claimed that his right to due process had been violated when the prosecutor referred to him as a "liar" and a "murderer" during closing argument. Id. The court stated that this was simply the prosecutor's interpretation of the evidence, which he was allowed to argue. Id.

In this case, the prosecutor's statements were based on reasonable inferences drawn from the State's evidence. Harrell's testimony differed significantly from the testimony presented by the State's witnesses. Appellant's App. p. 75. The prosecutor's statements did not imply personal knowledge of Harrell. Instead, such statements were inferred from the evidence presented at trial.

6

Harrell also takes issue with the following excerpt from the closing argument:

Mr. Howe [trial counsel] made a big deal out of things that police do in the interviews to try to get admissions. There isn't a single thing that these officers did in these interviews that was illegal. Do you think the judge would have let you see that if there was? This is murder….

Tr. 484. Harrell argues that such comments amount to prosecutorial misconduct and cites to this court's decision in Bardonner v. State, 587 N.E.2d 1353 (Ind. Ct. App. 1992).

Initially, we note that Harrell also failed to raise this particular language in his post-conviction relief petition and, therefore, has waived the issue. Walker v. State, 843 N.E.2d 50, 57 (Ind. Ct. App. 2006). Waiver notwithstanding, we find that Harrell's reliance on Bardonner is misplaced as Bardonner is not analogous to the situation here. Bardonner focused on statements made by the prosecutor during the voir dire process that were meant to precondition the jury to be receptive to the State's argument during trial. Id. at 1357. In Bardonner, the court distinguished voir dire from closing arguments, finding the actions of the prosecution improper specifically because they occurred during voir dire "instead of during closing arguments where counsel are granted greater leeway in arguing the law and the facts." Id. at 1358. Because Harrell takes issue with the prosecutor's closing argument, Bardonner is inapposite.

Furthermore, we agree with the post-conviction court's overall determination that, even had language in the prosecutor's closing argument amounted to misconduct, and, even if an objection to such language would have been sustained, Harrell has failed to show that he was prejudiced by such statements. Harrell was not convicted on the

strength of the closing argument alone. There was ample evidence to sustain his conviction. Harrell admitted to being at the scene and to hitting the victim in the head with a metal pipe. Antoine McMillan, who was involved in the incident, testified that Harrell was an active and willing participant in the murder. Appellant's App. p. 76. Thus, we agree with the post-conviction court's conclusion that Harrell has failed to show a reasonable probability that the outcome of the trial would have been different had trial counsel raised these objections.

### B. Defense of Duress

Second, Harrell argues that his trial counsel erred by presenting a defense of duress. Harrell points to Indiana Code section 35-41-3-8, which states that duress is not a defense to an offense against the person, which includes murder. In his closing argument, trial counsel stated:

> You've listened to all of the things and this beyond a reasonable doubt, the aiding and abetting, assisting, think about all of those things and weigh whether or not Raveon went there, did he knowing or intentionally do something, and was he doing those because of duress or what really did happen?

Tr. 479. When viewed in this context, it is apparent that this defense was an attempt to negate the mens rea element required for murder—that the killing was done knowingly or intentionally—rather than an attempt to establish a defense of duress. The post-conviction court noted that negation of the mens rea element was central to trial counsel's

8

defense throughout the trial.[1]  Although trial counsel did use the word "duress," it is clear from context that he was not arguing duress in its legal sense.

Even if we were to assume for argument's sake that trial counsel had argued duress, we agree with the post-conviction court's conclusion that Harrell has failed to show that trial counsel's assistance fell below an objectively reasonable standard as required by Strickland.  "Isolated poor strategy, bad tactics, a mistake, carelessness or inexperience do not necessarily amount to ineffective counsel unless, taken as a whole, the defense was inadequate."  Carr v. State, 728 N.E.2d 125 (Ind. 2000).  If a defense of duress was presented, it was not the only defense presented.  To quote the post-conviction court:

> [C]ounsel… presented a four-pronged theory of defense: (1) Addressing the dealing in cocaine and felony murder charges, defense counsel argued that Harrell did not participate in any drug deal on the day of the attack on Mr. Brown and, in fact, had never dealt drugs with his cousins. (2) Counsel argued that even [if] a drug deal preceded the attack on Mr. Brown, the transaction was so attenuated in time that it could not constitute the underlying felony for a felony murder charge. (3) Given Harrell's avowed fear of his cousin, Mr. Howe tried to establish that Harrell was not a willing participant in the attack and was not responsible for the actions of the others. (4) Mr. Howe asserted that Harrell did not have the required mens rea for murder…

Appellant's App. p. 79-80.  Thus, even if trial counsel was careless in using the word "duress" in his closing argument, the defense, taken as a whole, was not inadequate.

---

[1] The post-conviction court notes that trial counsel submitted two jury instructions, to serve both as preliminary and final instructions.  The instructions were on the offenses of reckless homicide and involuntary manslaughter, both of which require proof that the defendant acted with a lower level of culpability. Appellant's App. p. 80-81.

9

Third, Harrell argues that his trial counsel erred by failing to tender an instruction on the lesser-included offense of voluntary manslaughter and failing to object when the trial court did not offer such an instruction. Voluntary manslaughter is the knowing or intentional killing of another while acting under sudden heat. Ind. Code § 35-42-1-3. As trial counsel did not believe the element of sudden heat existed in this case, he did not believe that an instruction on voluntary manslaughter would have been appropriate: "The circumstances in this case was [that] there was not evidence sufficient to go for a voluntary manslaughter, because it was not a question of sudden heat." Appellant's Br. p. 7.

Generally, a tactical or strategic decision made by trial counsel will not support a claim of ineffective assistance unless such a decision was the result of unacceptable ignorance of the law or an otherwise deficient attorney performance. Brewington v. State, 7 N.E.3d 946, 977 (Ind. 2014). When the tactic at issue is hypothetically reasonable, it is the petitioner's burden to overcome a presumption of competent representation. Id. We agree with the post-conviction court that the decision not to tender an instruction on voluntary manslaughter was reasonable.

Sudden heat is defined as "sufficient provocation to excite in the mind of the defendant such emotions as anger, rage, sudden resentment, or terror." Fox v. State, 506 N.E.2d 1090, 1093 (Ind. 1987). It must be found that "such excited emotions may be sufficient to obscure the reason of an ordinary man." Id. Harrell cites to case law

holding that "[t]he jury should be instructed on voluntary manslaughter if there is any appreciable evidence of sudden heat." Champlain v. State, 681 N.E.2d 696, 702 (Ind. 1997). However, our Supreme Court has recently noted that giving a jury instruction on voluntary manslaughter when there is no evidence of sudden heat constitutes reversible error. Watts v. State, 885 N.E.2d 1228, 1232 (Ind. 2008).

Harrell argues that he acted in sudden heat because he was in a state of "terror" caused by his fear that, had he not participated hitting the victim, his cousin Tommie would have beaten him. Appellant's Br. p. 15. Harrell cites to no authority, and we find none, standing for the proposition that fear of a co-defendant can cause another co-defendant to kill a third party in a sudden heat. As such, we cannot agree with Harrell's assertion that there was "any appreciable evidence" of sudden heat that would have made an instruction on voluntary manslaughter appropriate.

Additionally, as noted earlier, part of trial counsel's defense was an attempt to negate the mens rea element of murder, which requires the defendant to have killed knowingly and intentionally. Voluntary manslaughter also requires the defendant to have killed knowingly and intentionally. The elements of voluntary manslaughter are the same as those of murder, except that in the case of voluntary manslaughter, sudden heat serves as a mitigating factor. Thus, as the post-conviction court noted, had trial counsel submitted an instruction on voluntary manslaughter, he would have weakened his argument that Harrell lacked intent by presenting seemingly inconsistent theories. Appellant's App. p. 83-84. Therefore, Harrell's argument that trial counsel was

11

ineffective for failing to tender a jury instruction on voluntary manslaughter is unavailing.

### D. Merger of Murder and Felony Murder

Finally, Harrell argues that his trial counsel rendered him ineffective assistance by failing to object at sentencing when the trial court merged his murder and felony murder counts. Harrell seems to be arguing that, because he was sentenced on counts of murder and dealing in cocaine, the resulting sentence was longer than it would have been had he only been convicted of one count of felony murder, for which the murder and dealing in cocaine counts would have served as predicates.

Once again we note that, in order for Harrell to show that trial counsel's failure to object constituted ineffective assistance, he must first show that, had an objection been made, the trial court would have had to sustain it. Oglesby v. State, 515 N.E.2d 1082, 1084 (Ind. 1987). We agree with the post-conviction court that Harrell has not made this showing.

As our Supreme Court explained in Kennedy v. State, a defendant may not be sentenced for both intentional murder and felony murder where only one murder occurs, nor may a defendant be sentenced for both felony murder and the underlying felony. 674 N.E.2d 966, 967 (Ind. 1996). However, a defendant may be sentenced for both intentional murder and a felony even when the jury has convicted the defendant of felony murder as a result of that murder and felony. Id. Therefore, in this case, had trial counsel objected, the trial court would not have sustained the objection.

12

Consequently, Harrell has failed to prove that his trial counsel's assistance was ineffective.

### III.  Assistance of Appellate Counsel

Harrell also argues that he received ineffective assistance of appellate counsel. Specifically, Harrell alleges his appellate counsel provided him with ineffective assistance by:

> (1) failing to raise the issue that the trial court erred when it did not instruct the jury on the lesser-included offense of voluntary manslaughter;

> (2) failing to raise the issue that the trial court erred in ordering consecutive sentences; and

> (3) failing to raise prosecutorial misconduct in the State's closing argument.

We apply the same standard of review to ineffective assistance of appellate counsel claims as we apply to ineffective assistance of trial counsel claims. Williams v. State, 724 N.E.2d 1070, 1078 (Ind. 2000). Thus, Harrell's claims must satisfy both prongs of the Strickland test. Our Supreme Court has recognized three basic categories of appellate counsel ineffectiveness: (1) denial of access to appeal; (2) failure to raise issues; and (3) failure to present issues well. Bieghler v. State, 690 N.E.2d 188, 193-95 (Ind. 1997). Harrell's claims all fall within the second category.

First, Harrell claims that his appellate counsel erred by failing to raise the issue that the trial court erred when it did not instruct the jury on voluntary manslaughter. Because we have already determined that trial counsel was not ineffective for failing to

raise this issue, we need not determine whether appellate counsel was ineffective for failing to raise it. Dawson v. State, 810 N.E.2d 1165, 1178 (Ind. Ct. App. 2004).

Second, Harrell argues that appellate counsel erred by failing to raise the issue of consecutive sentences. However, Harrell's appellate counsel did raise this issue and this court found against Harrell. Harrell v. State, No. 71A04-0304-CR-180, slip op. at 8-9 (Ind. Ct. App. Nov. 7, 2003). Therefore, this issue is res judicata. Schiro v. State, 533 N.E.2d 1201, 1204-05 (Ind. 1989).

Finally, Harrell argues that appellate counsel erred by failing to raise the issue of prosecutorial misconduct. Once again, it is not necessary for us to determine if appellate counsel was ineffective because we have already determined that trial counsel was not ineffective for failing to raise the same issue. Dawson, 810 N.E.2d at 1178.

Consequently, we agree with the post-conviction court that Harrell has failed to prove that his appellate counsel's assistance was ineffective.

The judgment of the post-conviction court is affirmed.

KIRSCH, J., and ROBB, J., concur.