**Jacob Lee PRICE, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 79S00–9108–CR–612.**

Supreme Court of Indiana.

May 28, 1992.

Bruce W. Graham, Trueblood & Graham, Lafayette, for appellant.

Linley E. Pearson, Atty. Gen., Gary Damon Secrest, Deputy Atty. Gen., Indianapolis, for appellee.

KRAHULIK, Justice.

Defendant–Appellant, Jacob Lee Price, challenges a jury verdict finding him guilty of attempted murder, a class A felony, battery by means of a deadly weapon, a class C felony, and battery resulting in serious bodily injury, a class C felony. Additionally, Price was found to be an habitual offender. Price received a sentence of 45 years on the attempted murder conviction, enhanced by 20 years as a result of the habitual offender determination, and eight years each on the charges of battery with a deadly weapon and battery resulting in serious bodily injury. The eight-year sentences were ordered to run concurrently with the 65–year sentence received on the attempted murder conviction.

Price presents three issues in this direct appeal. First, he claims that the jury was not properly instructed on the charge of attempted murder. Next, Price argues that the admission of his confession was in error. Finally, Price contends that the admission of certain hearsay statements of the victim was erroneous in that it denied Price his right to face-to-face confrontation.

### Facts

In July of 1990, Price, the victim, Patricia Bernard, and Fred Prachter, resided at 208 South Eighth Street in Lafayette. In the early morning hours of July 18th, Prachter overheard Price and the victim arguing. Prachter fled the apartment after hearing what he believed to be a gunshot. As he left, he heard two or three more "pops." Moments later, Prachter encountered Price who indicated that he was turning himself in.

Price went to the Lafayette police department headquarters, located near the house, and reported that a shooting had occurred. He indicated that there had been an argument, but that he did not know what happened. Price then left, saying that he was going to return to the residence.

When Lafayette police arrived on the scene, they found the victim in the doorway of the residence bleeding and in pain. The victim told officers on the scene that she had been shot by Jake Price. As police questioned several neighbors who were present as to the identity and possible whereabouts of Jake Price, three males appeared at a corner of the building. When asked, Price identified himself. He was ordered at gunpoint to the ground. At some point during his apprehension, Price was asked where the gun was. He replied, "I ain't gonna lie, I shot her and I'll show you where the gun is." Price then led officers to the general area where the gun was located. A brief search turned up a .22 caliber rifle. Four shell casings were located at the scene and an additional spent casing remained in the rifle.

The victim was transported to the hospital where she was treated for five separate gunshot injuries. A bullet retrieved from the body of the victim was eventually determined to have been fired from the weapon retrieved at the scene.

### Attempted Murder Instruction

Price argues that the trial court committed fundamental error by failing to instruct the jury that the defendant must have acted with specific intent to kill in order to sustain a conviction on the crime of attempted murder. Price relies on this Court's recent decision in *Spradlin v. State* (1991), Ind., 569 N.E.2d 948. In *Spradlin,* this Court explicitly set forth the requirement that a jury be informed that in order to convict on a charge of attempted murder, the State must prove beyond a reasonable doubt that at the time the defendant acted, he did so with intent to kill the victim. The *Spradlin* jury was read both the statutory definition of attempt, *Ind. Code* § 35–41–5–1 (1988), and the statutory definition of murder, *Ind. Code* § 35–42–1–1(1) (1988), but was not informed by any instruction that intent to kill was an element of the crime of attempted murder. We held that the failure to include the element of "intent to kill" constituted fundamental error.

■ Price argues that the instructions given in *Spradlin* were virtually identical to those instructions read to the jury in this case. We disagree. As in *Spradlin,* the jury in this case was read the general attempt statute and the statute defining murder. The jury was also read the statute defining culpability. *Ind. Code* § 35–41–2–2 (1988). Unlike Spradlin, however, the jury was also read the charging information on attempted murder. The information of attempted murder reads as follows:

> Jacob Lee Price did attempt to commit the crime of Murder by knowingly and intentionally firing a gun in the direction of Patricia E. Bernard *with the intent to kill* the said Patricia E. Bernard, which conduct constituted a substantial step towards the commission of the crime of Murder. . . .

(Emphasis supplied.) We note that this case was tried before the publication of our opinion in *Spradlin* and hold that the instructions given in this case did not constitute fundamental error. We believe that, as in *Hurt v. State* (1991), Ind., 570 N.E.2d 16, the instructions here, taken as a whole, succeeded in informing the jury that intent to kill is an element of the crime of attempted murder. *Spradlin,* 569 N.E.2d at 950.

### Admission of Confession

■ Price argues that the statement he made to police that "I ain't gonna lie; I shot her and I'll show you where the gun is," should not have been admitted at trial because it was a coerced confession. Price argues that he was forced to the ground and, with police guns pointed at his head, asked where the weapon was. Price notes that he had not been given his *Miranda* rights at any time prior to his statement. Reading the trial record does not answer the question of when, and under what conditions, Price was asked where the weapon was, but it does confirm that Price had not been read his *Miranda* rights prior to making the statement. Price charges that the consequent admission of his statement violated his Fifth Amendment right against self-incrimination and his Fourteenth Amendment right to due process. He argues that the trial court could not have reasonably determined that his statement was voluntary. Thus, Price argues that the court clearly committed error by admitting his coerced statement.

In support of his argument, Price cites and attempts to distinguish the U.S. Supreme Court's decision in *New York v. Quarles* (1984), 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550. In *Quarles,* a suspect in an armed rape was apprehended in a supermarket after a chase. When the accused was stopped, it was discovered that he was wearing an empty shoulder holster. Police asked where the gun was without first giving a statement of *Miranda* rights. The U.S. Supreme Court, on appeal, held that overriding considerations of public safety justified the officer's failure to first provide *Miranda* warnings before asking questions directed at locating the weapon. Price argues that *Quarles* is factually distinguishable from the present case. Our reading of *Quarles,* however, leads us to conclude that both the facts and decision in *Quarles* are significantly analo-

gous. In *Quarles,* the defendant was surrounded by at least four police officers and was handcuffed when the questioning took place. Obviously, the police officers did not fear for their own physical safety. The police did, however, have an immediate concern for the safety of the general public in that an armed weapon remained undiscovered. The U.S. Supreme Court determined from those facts that a public safety exception existed to the *Miranda* requirement. An identical risk to the public safety existed in this case. Certainly, this falls within the public safety exception created in *Quarles.*

Additionally, it should be noted that the only question officers asked of Price prior to giving him proper *Miranda* warnings was the location of the weapon. In response to this question, Price volunteered the information that he had shot the victim. Price contends that the coercion resulted from the fact that he had been placed on the ground with a gun to his head. Whether this was, in fact, the case was not supported by testimony of any of the other officers or witnesses. But, even if the situation did occur as Price claims, the fact that he was asked only one question, that of the location of the weapon, argues in favor of the fact that the other admission that he made regarding shooting the victim was voluntary. The court did not err in admitting this statement into evidence.

### Admission of Hearsay

■ Price next argues that the admission of certain hearsay statements was erroneous and that it denied Price his right to face-to-face confrontation. The hearsay challenged takes the form of testimony given by several witnesses, including both the victim's neighbors and police officers called to the scene, concerning statements that the victim made to the effect that she had been shot by Jake Price. These statements were admitted over objection by defense counsel based upon the court's determination that they fell within a *"res gestae* or excited utterance exception to the hearsay rule."

Prior to trial, the victim submitted an affidavit to the court informing it that she did not wish to testify and, if put on the stand, would assert her Fifth Amendment right not to do so. Once the trial started, however, she was in the courtroom and, according to the prosecution, appeared to be available for cross-examination. As the trial neared its end, the victim was admitted to Wabash Valley Hospital, a psychiatric care hospital. The prosecution was allowed to place the victim's treating psychologist on the stand to testify as to why the victim was not present. Dr. Premo submitted that he had diagnosed the victim as suffering from post-traumatic stress disorder. He claimed that she reported amnesia regarding the shooting and was rendered into a panic by being reminded of the episode. Dr. Premo then testified that he did not believe the victim would be able to testify at any time in the foreseeable future.

The defendant claims that the admission of the victim's statements violated his right to confrontation afforded by both the Sixth Amendment of the United States Constitution and Article I Section 13 of the Constitution of Indiana. In *Idaho v. Wright* (1990), 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638, the Supreme Court succinctly stated, "The confrontation clause ... bars admission of some evidence that would otherwise be admissible under an exception to the hearsay rule." The Court, however, recognized this as a qualified right. In *Ohio v. Roberts* (1980), 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597, the Supreme Court determined that the government could introduce hearsay against a defendant in a criminal case without giving the defendant an opportunity to confront the witness against him if: the hearsay possesses *indicia* of reliability and either (a) the declarant is unavailable despite the government's good faith effort to obtain the declarant's presence at trial, or (b) the utility of confrontation at trial is remote."

In *Idaho v. Wright,* the Court referred to its earlier opinion in *Roberts* for the principle that the *"indicia* of reliability" requirement could be met in either of two circumstances: "[W]here the hearsay statement

'falls within a firmly rooted hearsay exception,' or where it is supported by 'a showing of particularized guarantees of trustworthiness.'" *Idaho v. Wright* 497 U.S. at 815, 110 S.Ct. at 3147, 111 L.Ed.2d at 653. A "firmly rooted hearsay exception" is one that has "a long tradition of being outside the compass of the general hearsay exclusion." *Bourjaily v. United States* (1987), 483 U.S. 171, 183, 107 S.Ct. 2775, 2782, 97 L.Ed.2d 144, 157. Both federal and state courts have held that an excited utterance falls within the realm of firmly rooted hearsay exceptions. *See, United States v. Moore* (1986), 7th Cir., 791 F.2d. 566; *Holmes v. State* (1985), Ind., 480 N.E.2d 916. Thus, the statements submitted in this case meet the first part of the *Ohio v. Roberts* test; the statements possess sufficient "indicia of reliability."

We must now determine whether the second part of the *Ohio v. Roberts* test has been met, that is, whether either the declarant was unavailable or the utility of confrontation was remote. We hold that the victim's statements met both sub-parts of this test.

First, the victim was unavailable to testify for two reasons: She had filed an affidavit with the court informing it that if called to testify she would invoke her "Fifth Amendment right to remain silent", and her mental illness prohibited her from testifying. Secondly, the utility of confrontation was remote because the crux of the victim's statement—that she had been shot .by Jake Price—was uncontested. Price made clear, both at trial and in his appellate brief, that the issue in this case was intent, not identity. The only hearsay statements admitted concerned the identity of the perpetrator of the crime. At no time did Price contest the accuracy of these statements. In fact, Price affirmed them by his confession. Consequently, it is difficult to see how he was prejudiced by the admission of these statements. Because the defendant was not challenging the truth of the declarant's hearsay statements, it is apparent that any cross-examination of the declarant regarding these statements would have little or no value.

Because both prongs of the *Ohio v. Roberts* test have been met, we hold that the defendant was not deprived of his constitutional rights of confrontation.

### Conclusion

The jury instruction on the attempted murder charge, taken as a whole, did not constitute fundamental error. Additionally, the defendant's confession was properly admitted as were certain hearsay statements. Therefore, Price's convictions are affirmed.

SHEPARD, C.J., and GIVAN and DICKSON, JJ., concur.

DeBRULER, J., concurs in result, without separate opinion.