**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



APPELLANT PRO SE:

**DENON TAYLOR**
Carlisle, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DENON TAYLOR, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1305-PC-265 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
Cause No. 49G04-9212-CF-168647

**June 20, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Denon Taylor appeals the post-conviction court's denial of his petition for post-conviction relief. We affirm.

**Issues**

Taylor raises two issues, which we restate as:

I.     whether he was denied the effective assistance of trial counsel; and

II.    whether he was denied the effective assistance of appellate counsel.

**Facts**

The facts, as stated in Taylor's direct appeal, follow:

> Denon Taylor was convicted by a jury of murdering his wife, Dorthea Taylor. Dorthea was killed in the early morning hours of December 6, 1992, outside the Indianapolis apartment building where she had taken an apartment the day before. She had filed for divorce on September 29, 1992, and had obtained a restraining order against Taylor on November 23, 1992, based on his physical abuse and threats to kill her.
>
> Cecil Holly also had an apartment in Dorthea's new building. On the evening before her death, Dorthea was to attend an office Christmas party. She lent her car to Holly who dropped her off at a friend's house to proceed to the party. Holly then picked up his youngest brother and a friend. As the three were driving in downtown Indianapolis, they coincidentally passed Taylor, who recognized Dorthea's car and pursued it. At one stop, Taylor initiated a verbal exchange with Holly and challenged Holly's use of Dorthea's car. At a second stop Holly could see Taylor possessed a handgun. With Taylor following, Holly then drove to a nearby nightclub where he knew off-duty police served as security guards and informed a guard in the parking lot of the club that Taylor had a handgun. The officer searched Taylor, but found no gun on his person. The guard then told Holly to

2

leave while he spoke with Taylor. Holly returned to his home where Taylor telephoned him three times within an hour. Among other things, Taylor said that if he could not have Dorthea, nobody could, and that he would kill her. After the last of the calls, Holly received a page from Dorthea and went to pick her up at her friend's house.

In the meantime, after the last of his calls to Holly, Taylor telephoned Alif Rogers, a friend, and asked him to come over to Taylor's home, which Rogers did. When Rogers arrived, Taylor got in the car, and told Rogers to drive to Dorthea's apartment building. On arrival, the two drove around the parking lot looking for Dorthea's car. When they did not find the car, at Taylor's instruction, Rogers backed into a parking space facing the apartment house to await Dorthea's return.

Holly and Dorthea arrived in Dorthea's car about thirty or forty minutes later. Once more at Taylor's instruction, Rogers followed the car until Holly parked and Holly and Dorthea proceeded on foot toward the building. At that point Taylor jumped from Rogers' car and ran toward them yelling, "Yeah, yeah I got you now. I got you now, bitch. You're going with me." Dorthea refused, and Taylor struck her with a gun he had removed from his waistband. Dorthea told Holly to call the police and, as Holly ran, Taylor fired a shot at Holly. Holly first dove for the ground, then fled to the building. From the building Holly could see Taylor drag Dorthea by her hair and hear both continuing to shout. Finally, Taylor first threatened to kill Dorthea if she did not come with him, then pulled her head up to the pistol and fired.

The foregoing is largely taken from Holly's testimony. Rogers' version of these events is that he stayed in his car listening to a loud tape after Taylor got out to confront Holly and Dorthea. At the time he removed the tape to listen to the other side, he heard a muffled gunshot. As he turned to look, Taylor jumped in the car. Rogers asked Taylor if he was trying to scare Dorthea. Taylor responded that he had shot her.

Taylor v. State, 681 N.E.2d 1105, 1107-08 (Ind. 1997).

3

After his June 1994 trial, Taylor was convicted of the murder of Dorthea, Class A felony attempted murder of Holly, and Class A misdemeanor carrying a handgun without a license. He received an aggregate sentence of 100 years in the Department of Correction. In his direct appeal, Taylor raised five issues: (1) whether the trial court committed reversible error in its instruction that "lying in wait" can be proof of specific intent to commit murder; (2) whether the instruction's "emphasis on lying in wait" impermissibly shifted the burden of persuasion to the defendant as to intent; (3) whether the presence in the jury room of a withdrawn death sentence request constituted reversible error; (4) whether the convictions were supported by sufficient evidence; and (5) whether the sentence imposed was manifestly unreasonable. Id. at 1107. On June 12, 1997, our supreme court rejected Taylor's arguments and affirmed the convictions.

Eventually, Taylor filed a petition for post-conviction relief raising two issues: (1) whether trial counsel was ineffective for failing to "object to the improper jury instructions under" Spradlin v. State, 569 N.E.2d 948, 950 (Ind. 1991); and (2) whether appellate counsel was ineffective because, "[d]uring the trial, one of the central issues was Defendant's intent to commit Attempted Murder yet the jury was provided with instructions that allowed them to find Defendant guilty without the required specific mens rea, in clear violation of Spradlin." App. pp. 98-99. After a hearing, the post-conviction court entered findings of fact and conclusions thereon denying Taylor's petition. Taylor now appeals.

**Analysis**

Taylor argues that the post-conviction court erred by denying his petition. A court that hears a post-conviction claim must make findings of fact and conclusions of law on all issues presented in the petition. Pruitt v. State, 903 N.E.2d 899, 905 (Ind. 2009) (citing Ind. Post-Conviction Rule 1(6)). "The findings must be supported by facts and the conclusions must be supported by the law." Id. Our review on appeal is limited to these findings and conclusions. Id. Because the petitioner bears the burden of proof in the post-conviction court, an unsuccessful petitioner appeals from a negative judgment. Id. (citing P-C.R. 1(5)). "A petitioner appealing from a negative judgment must show that the evidence as a whole 'leads unerringly and unmistakably to a conclusion opposite to that reached by the trial court.'" Id. (quoting Allen v. State, 749 N.E.2d 1158, 1164 (Ind. 2001), cert. denied). Under this standard of review, "[we] will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion." Id.

Taylor argues that both his trial counsel and appellate counsel were ineffective. We apply the same standard of review to claims of ineffective assistance of appellate counsel as we apply to claims of ineffective assistance of trial counsel. Williams v. State, 724 N.E.2d 1070, 1078 (Ind. 2000), cert. denied. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his or her counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance. Ben-Yisrayl v. State, 729 N.E.2d 102, 106 (Ind. 2000) (citing Strickland v.

5

Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)), cert. denied. A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. French v. State, 778 N.E.2d 816, 824 (Ind. 2002). To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068. Failure to satisfy either prong will cause the claim to fail. Grinstead v. State, 845 N.E.2d 1027, 1031 (Ind. 2006). Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone. Id.

## I. Ineffective Assistance of Trial Counsel

Taylor argues that his trial counsel was ineffective for failing to object to jury instructions on attempted murder that allegedly violated Spradlin. Taylor was tried in 1994. In 1991, our supreme court had held that an attempted murder instruction "must inform the jury that the State must prove beyond a reasonable doubt that the defendant, with intent to kill the victim, engaged in conduct which was a substantial step toward such killing." Spradlin, 569 N.E.2d at 950. The instructions given at Taylor's trial provided:

> A person attempts to commit a crime when he knowingly or intentionally engages in conduct that constitutes a substantial step toward the commission of the crime.
>
> An attempt to commit a crime is a felony or misdemeanor of the same class as the crime attempted.

6

The crime of murder is defined by statute as follows:
A person who knowingly or intentionally kills another human being commits murder.

To convict the defendant of attempt murder, the State must have proved each of the following elements:

The defendant Denon A. Taylor
1. knowingly or intentionally
2. engaged in conduct with intent to kill Cecil B. Holly by knowingly shooting a deadly weapon, a handgun, at and toward the person of Cecil B. Holly
3. which conduct constitutes a substantial step toward the knowing or intentional killing of another human being.

If the State failed to prove each of the elements beyond a reasonable doubt, the defendant should be found not guilty.

If the State did prove each of the elements beyond a reasonable doubt, then you should find the defendant guilty of attempt murder, a class A felony.

R. at 176.

According to Taylor, the instruction was erroneous because it included the mens rea of "knowingly" several times.[1] Taylor acknowledges that the instruction included a reference to "intent to kill," but he argues that including "knowingly" reduced "the requisite mens rea on which a jury could convict Taylor for attempted murder."

---

[1] The post-conviction court found that the use of "knowingly" in the instruction was not improper at the time of Taylor's trial and found no Spradlin violation. App. pp. 159-60. On appeal, the State makes no argument that the use of "knowingly" was permissible at the time of the trial. Rather, the State argues that, under Greenlee v. State, 655 N.E.2d 488, 491 (Ind. 1995), and Price v. State, 591 N.E.2d 1027, 1029 (Ind. 1992), "the mere presence of a reference to a 'knowing' state of mind does not necessarily create error, even if it is not completely correct under Spradlin, so long as the jury is still clearly told of the need to find that the defendant acted with the intent to kill." Appellee's Br. p. 18. We need not address this issue because we conclude that, even if the instruction was erroneous, Taylor was not prejudiced by his trial counsel's failure to object to it.

7

Appellant's Br. p. 12. Taylor contends that his trial counsel's failure to object to the instruction was deficient and that he was prejudiced by the failure.

We need not address whether trial counsel's performance was deficient because we conclude that Taylor was not prejudiced by the alleged deficiency. In <u>Ramsey v. State</u>, 723 N.E.2d 869, 871 (Ind. 2000), our supreme court addressed an attempted murder instruction that included a "knowingly" mens rea but also stated that the defendant had to have a "specific intent to kill." The court held that, although the trial court should not have included the word "knowingly" in the instruction, the instruction properly mentioned the "specific intent to kill" both as an element in the charging instrument and as an element that the State was required to prove beyond a reasonable doubt. <u>Ramsey</u>, 723 N.E.2d at 872. The court found that the jury instructions, taken as a whole, sufficiently informed the jury of the State's burden of proving that the defendant specifically intended to kill the victim. <u>Id.</u> at 873. The reversal of an attempted murder conviction, despite a <u>Spradlin</u> error, is not required if either the intent of the perpetrator is not a central issue at trial or the instructions as a whole sufficiently suggested the requirement of the intent to kill. <u>Id.</u> at 872 n.4.

Here, in addition to the final instruction on attempted murder that mentioned the "intent to kill" requirement, the charging information, which was read to the jury as part of the preliminary instructions, also alleged that Taylor had the "intent to kill" Holly. R. at 136. Finally, the jury was also instructed that:

> The intent to kill may be inferred from the use of a
> deadly weapon in a manner likely to cause serious bodily

8

> injury or death and may be inferred from discharging a weapon in the direction of the victim.
>
> The intent to kill can be found from the acts, declarations and conduct of the defendant at or just immediately before the commission of the act, from the character of the weapon used, and from the part of the body on which the wound was inflicted.

Id. at 169. The instructions as a whole sufficiently suggested the requirement of the intent to kill.

Further, Taylor's intent to kill Holly was not a central issue at his trial. Taylor's argument at trial was that he did not shoot at Holly and, thus, did not take a substantial step toward killing Holly. Once the jury determined that Taylor did, in fact, shoot at Holly, his intent was not in question. Testimony at the trial established that Taylor had threated to kill Dorthea and anyone that got in his way. Even if trial counsel was deficient, Taylor has failed to demonstrate that, but for the alleged deficiency, the result of the proceeding would have been different. The post-conviction court's denial of Taylor's petition on this basis is not clearly erroneous.

## II. Ineffective Assistance of Appellate Counsel

Taylor also argues that his appellate counsel was ineffective because she failed to argue in the direct appeal that the attempted murder instruction resulted in fundamental error. Because the strategic decision regarding which issues to raise on appeal is one of the most important decisions to be made by appellate counsel, appellate counsel's failure to raise a specific issue on direct appeal rarely constitutes ineffective assistance. See Taylor v. State, 717 N.E.2d 90, 94 (Ind. 1999). The Indiana Supreme Court has adopted

a two-part test to evaluate the deficiency prong of these claims: (1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the unraised issues are "clearly stronger" than the raised issues. Bieghler v. State, 690 N.E.2d 188, 194 (Ind. 1997), cert. denied. If this analysis demonstrates deficient performance by counsel, the court then examines whether the issues that appellate counsel failed to raise "would have been clearly more likely to result in reversal or an order for a new trial." Id.

The post-conviction court concluded that appellate counsel's performance was not deficient because, even if she had raised the issue of fundamental error as a result of the attempted murder instruction, the argument would not have been successful. The post-conviction court noted that Taylor's intent as to Holly was not a central issue in the case. The post-conviction court also found no prejudice. On appeal, Taylor briefly argues that his appellate counsel's failure to raise the issue on direct appeal was ineffective assistance.

Because Taylor's trial counsel did not object to the attempted murder jury instruction at trial, appellate counsel would have been required to raise this issue on direct appeal as fundamental error. "The 'fundamental error' exception is extremely narrow, and applies only when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." Mathews v. State, 849 N.E.2d 578, 587 (Ind. 2006). "The error claimed must either make a fair trial impossible or constitute clearly blatant violations of basic and elementary principles of due process." Brown v. State, 929

N.E.2d 204, 207 (Ind. 2010) (internal quotation omitted). "This exception is available only in egregious circumstances." Id. (internal quotation omitted).

In Dawson v. State, 810 N.E.2d 1165, (Ind. Ct. App. 2004), trans. denied, we addressed a similar ineffective assistance of appellate counsel argument. The instructions at the defendant's trial included a "knowingly" mens rea and also required an "intent to kill." Dawson, 810 N.E.2d at 1174. We held that the instructions given at the defendant's trial adequately informed the jury to convict him only if they found he had the specific intent to kill. Consequently, his appellate counsel could not have proven the prejudice necessary to establish a claim of fundamental error. Id. at 1176 (citing Price, 591 N.E.2d at 1029). Thus, appellate counsel was not ineffective for failing to challenge the attempted murder jury instructions on direct appeal. Id.

Similarly, here, the jury instructions adequately informed the jury that a specific intent to kill Holly was required to convict Taylor of attempted murder. Further, Taylor's intent was not a central issue at trial. Taylor's appellate counsel would have been unable to demonstrate that the jury instructions resulted in fundamental error. Consequently, his appellate counsel did not fail to present a significant and obvious issue, and she was not ineffective for failing to challenge the attempted murder jury instruction as fundamental error. The post-conviction court's denial of Taylor's petition on this issue is not clearly erroneous.

## Conclusion

The post-conviction court properly denied Taylor's petition for post-conviction relief. We affirm.

11

Affirmed.

BAKER, J., and CRONE, J., concur.