## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

ATTORNEY FOR APPELLANT

Erin L. Berger
Evansville, Indiana



FILED

Jan 19 2017, 10:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.,
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Termination of the Parent-Child Relationship of: G.C., A.R., and B.R. (minor children); <br><br> E.R. (mother) <br><br> *Appellant-Respondent,* <br><br>    v. <br><br> The Indiana Department of Child Services, <br><br> *Appellee-Petitioner.* | January 19, 2017 <br><br> Court of Appeals Case No. 82A05-1607-JT-1753 <br><br> Appeal from the Vanderburgh Superior Court <br><br> The Honorable Brett J. Niemeier, Judge <br><br> Trial Court Cause Nos. 82D04-1507-JT-1274 82D04-1507-JT-1275 82D04-1507-JT-1276 |

**Pyle, Judge.**

## Statement of the Case

E.R. ("Mother") appeals the termination of the parental-relationship with her children, G.C. ("G.C."), A.R. ("A.R."), and B.R. ("B.R."), (collectively "the children"), claiming that: (1) the trial court erred in denying her motions to correct error and for a new trial; and (2) the Department of Child Services ("DCS") failed to prove by clear and convincing evidence that there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for placement outside Mother's home will not be remedied. Concluding that the trial court did not err in denying the motions and that there is sufficient evidence to support the trial court's decision to terminate the parent-child relationship, we affirm.

## Issues

1.    Whether the trial court erred in denying Mother's motions to correct error and for a new trial.

2.    Whether there is sufficient evidence to support the termination of the parent-child relationship.

## Facts

Mother is the parent of G.C., who was born in August 2001; A.R., who was born in September 2008; and B.R., who was born in May 2012. In September 2013, Mother and the three children had recently been evicted from their home and were living without electricity or water. Mother, who was suffering from mental health issues and abusing alcohol and methamphetamine, physically

abused twelve-year-old G.C. She subsequently pled guilty to battery causing physical injury and was sentenced to probation.

[3] The three children were removed from Mother and placed in foster care after a failed family placement. Shortly thereafter, all three children were adjudicated to be Children in Need of Services ("CHINS"). The trial court ordered Mother to: (1) participate in substance abuse and mental health treatment; (2) remain alcohol and drug free; and (3) secure and maintain adequate and stable housing.

[4] Despite the trial court's order, Mother continued to use alcohol, opiates, and methamphetamine. She was also unable to maintain stable employment. Her probation was revoked and she was incarcerated for five months.

[5] In July 2015, DCS filed a petition to terminate Mother's parental rights. At the two-day termination hearing held in February and March 2016, Mother testified that she had "never really been able to hold employment" and at one time had seven jobs in ten months. (Tr. 12). She also testified that she had "mental issues" and that she had "been an addict all [her] life." (Tr. 12, 13). She further admitted that she had used marijuana two weeks before the termination hearing. In addition, according to Mother, she was living with her brother and his family, who lived beyond their means and were frequently evicted.

[6] DCS Family Case Manager Dashea Head ("FCM Head"), who worked with Mother until June 2015, testified that Mother had lived in various places from the time the children were removed until DCS filed the termination petition.

Specifically, Mother had lived with her brother, been homeless, and lived at the YWCA. She had also "been in and out of jail." (Tr. 54). According to FCM Head, Mother had never been "able to hold down a job," and she was dismissed from mental health treatment services because she had not complied with the psychiatrist's recommendations and had refused to take her prescribed medication. (Tr. 55).

[7] CASA Jennifer Bromm ("CASA Bromm") testified that Mother's living situation with her brother and his family was "chaotic and . . . dysfunctional." (Tr. 68). Bromm further testified that "even given the extra time with this case, I don't think there's been any progress with providing a stable home for these children with the mother. She's not shown that." (Tr. 68-69). Further, according to Broom, Mother's lack of participation in the mental health services "showed more instability because [Mother] was not able to attend on any regular basis." (Tr. 69). Bromm recommended termination of Mother's parental rights and testified that this was in the children's best interest.

[8] In May 2016, the trial court issued an order terminating Mother's parental rights. Specifically, the trial court found that Mother was "unable to provide a long-term safe, secure, stable environment for the children due to her continued lack of housing stability, on-going substance abuse, and unresolved mental health issues." (App. 54). Based upon this finding, the trial court concluded that there was a reasonable probability that the conditions that resulted in the children's removal and the reasons for their continued placement outside the home would not be remedied because "the mother lack[ed] stability,

inappropriately self-medicate[d] and suffer[ed] from chronic mental health issues, which continue[d] to be untreated." (App. 55). The trial court further concluded that the continuation of the parent-child relationship posed a threat to the children's well-being because "the children lack[ed] stability and their mother [could] not adequately provide for their emotional and physical needs." (App. 55).

[9] Mother timely filed motions to correct error and for a new trial wherein she argued that "[f]ollowing the close of evidence in the trial, the Mother secured housing and employment and was successfully participating in other services." (App. 56, 57). In the motion to correct error, Mother asked the trial court to issue new findings of fact which would "take into account [Mother's] housing, employment, and efforts towards services." (App. 57). In her motion for a new trial, Mother argued that evidence of Mother's housing and employment and efforts to participate in services "would likely produce a different result at trial." (App. 56). At the hearing on the motions, the State asked the trial court to deny the motions, which were not supported by affidavits. The State further argued that "based on the evidence at trial with her long history of instability and mental health issues . . . we don't think that she's able to provide a long term safe environment for her children." (Tr. 103-04). The trial court denied both motions. Mother appeals the denial of these motions as well as the termination of her parental rights.

# Decision

## 1. Denial of Mother's Motions

Mother first argues that the trial court erred in denying her motions to correct error and for a new trial. However, DCS correctly points out that Mother has not developed a separate argument specifically addressing the denial of these motions. She has also failed to support this issue with citations to authority. Mother has therefore waived appellate review of it. *See Reel v. Clarian Health Partners*, 855 N.E.2d 343, 345, n.1 (Ind. Ct. App. 2006) (explaining that plaintiffs' failure to develop their argument in their appellate brief or support it with citations to authority waived appellate review of that issue).

Waiver notwithstanding, we find no error. We review a trial court's ruling on motions to correct error and for a new trial for an abuse of discretion. *Wortkoetter v. Wortkoetter*, 971 N.E.2d 685, 687 (Ind. Ct. App. 2012) (motion to correct error); *Deree v. All American Shipping Supplies, Inc.*, 718 N.E.2d 1214, 1215 (Ind. Ct. App. 1999), *trans. denied*, (motion for a new trial). An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court including the reasonable inferences therefrom. *Wortkoetter*, 971 N.E.2d at 687.

Our review of the evidence reveals that these motions were based on Mother apparently finding housing and employment after the trial court issued its termination order. However, trial courts have discretion to weigh a parent's prior history more heavily than efforts made only shortly before, or, in this case,

after termination, and courts may find that a parent's past behavior is the best predictor of his or her future behavior. *See In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014). The trial court did not abuse its discretion in denying Mother's motions.

## 2. Sufficiency of the Evidence

Mother also argues that there is insufficient evidence to support the termination of her parental rights. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013). However, the law provides for termination of that right when parents are unwilling or unable to meet their parental responsibilities. *In re Bester*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents but to protect their children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

When reviewing the termination of parental rights, we will not weigh the evidence or judge the credibility of the witnesses. *K.T.K.*, 989 N.E.2d at 1229. Rather, we consider only the evidence and reasonable inferences that support the judgment. *Id*. Where a trial court has entered findings of fact and conclusions thereon, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* (citing Ind. Trial Rule 52(A)). In determining whether the court's decision to terminate the parent-child relationship is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *Id.* at 1229-30.

A petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>>
>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

IND. CODE § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.,* 989 N.E.2d at 1231.

Here, Mother argues that there is insufficient evidence to support the termination of her parental rights. Specifically, she contends that the evidence is insufficient to show that there is a reasonable probability that the conditions that resulted in her children's removal or the reasons for their placement outside her home will not be remedied. However, the trial court also concluded that there was a reasonable probability that a continuation of the parent-child relationship posed a threat to the children's well-being. Because the statute is written in the disjunctive, it requires the trial court to find only one of the subsection (B) requirements by clear and convincing evidence. *In re L.S.*, 717

N.E.2d 204, 209 (Ind. Ct. App. 1999), *reh'g denied, trans. denied, cert. denied*. Standing alone, the trial court's conclusion that there was a reasonable probability that a continuation of the parent-child relationship posed a threat to the child's well-being satisfies the subsection (B) requirement, and we need not address Mother's argument.

[17] However, because of the great interests at stake in termination proceedings, we choose to address Mother's contention on the merits. In determining whether the conditions resulting in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.*

[18] Here, our review of the evidence reveals that the children were removed from Mother because she was unable to provide them with safe and secure housing. She also had mental health issues and abused alcohol and drugs. At the time of the hearing, Mother was living with her brother and his family in a chaotic and dysfunctional environment. She had been dismissed from mental health treatment services because she had not complied with the psychiatrist's

recommendations and had refused to take her prescription medication. Lastly, Mother was still using illegal drugs shortly before the termination hearing. This evidence supports the trial court's conclusion that DCS proved by clear and convincing evidence that there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for placement outside Mother's home will not be remedied. There is sufficient evidence to support the termination.

[19] We reverse a termination of parental rights "only upon a showing of 'clear error'—that which leaves us with a definite and firm conviction that a mistake has been made." *Egly v. Blackford Cnty. Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992). We find no such error here and therefore affirm the trial court.

[20] Affirmed.

Baker, J., and Mathias, J., concur.